Joseph E. Hadley *et al. vs.* Harold Realty Co. *et al.*

MARCH 9, 1964.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This bill in equity was brought to enjoin one of the respondents from making a commercial use of a tract of land located on West Main Road in the town of Middletown pursuant to an amendment to the zoning ordinance. The cause was heard by a justice of the superior court who thereafter entered a decree denying and dismissing the bill. From that decree the complainants prosecuted an appeal to this court.

The land to which the amendment applied is a portion of a nineteen-acre tract on which Harold Realty Co., hereinafter referred to as the respondent, proposes to erect a retail shopping center. The tract extends westerly from West Main Road to depths ranging from 1200 to 1600 feet. That portion of the tract immediately adjacent to West Main Road was always zoned for business to a depth of 300 feet, while the remaining portion thereof, to which the amendment applied, had been zoned for residential uses. It is bounded on the north by land zoned for business uses and by an access road to certain properties owned by the United States; on the south by land zoned for business and by residential property and by a street known as Chase's Lane; and on the west by land zoned for residential uses upon which is located a housing development known as the Chase Estates.

In 1958 the town council enacted a zoning ordinance in compliance with the statutory requirements therefor. It

provided for three use classifications, two of which were residential and one permitting general business uses. A residence district was established in a part of the town wherein a number of substantial estates are located, while the business districts comprised strips of land bordering on portions of the main or arterial highways to a depth of 300 feet. There is but one exception to the 300-foot depth limitation in business districts, that being a parcel of land bordering on the highway at Two-Mile Corner, so called, which is zoned for business to a depth of 600 feet and is occupied by a shopping center that was under construction at the time of the enactment of the ordinance. Whatever land located in the town that was not included within these districts was classified as residence B.

On August 7, 1961 the original zoning ordinance was amended, changing the classification of that portion of the tract here under consideration from residence B to business uses. The complainants contend that in thus amending the ordinance the town council exceeded its authority under the enabling act, G. L. 1956, chap. 24 of title 45. They argue that the amendment establishes a business district which violates the comprehensive plan for zoning contemplated in the ordinance; that the amendment constitutes illegal spot zoning; and that the amendment violates the norms or standards that in §45-24-3 are prescribed for exercises of the delegated power.

These raise a single comprehensive issue as to whether the amendment was enacted in excess of the authority to regulate and restrict the use of land within the town conferred upon the town council by the pertinent provisions of the enabling act. Section 45-24-1 delegates to the towns the power to "regulate and restrict" by ordinance land uses within the town, while §45-24-2 authorizes the town council to create zoning districts within the town and that "within such districts it may regulate and restrict the erection,

\* \* \* repair or use of buildings, structures or land." Town councils, in exercising the delegated power, are subject to limitations in the use thereof by the provisions of §45-24-3, which require that the regulations enacted pursuant thereto "shall be made in accordance with a comprehensive plan and designed" to secure and promote objectives therein specified in order to conserve values and to encourage the appropriate use of land.

In *Cianciarulo v. Tarro*, 92 R. I. 352, 358, 168 A. 2d 719, 722, this court said that the "requirement set out in §45-24-3 that the zoning regulations conform to a comprehensive plan is mandatory and that strict compliance therewith is required of a local legislature when it enacts a zoning ordinance." Of the remaining provisions of said section we further said at page 359: "The remainder of the provisions set out in §45-24-3 establishes the objectives that are to be accomplished through an exercise of the zoning power by a local legislature. It is clear from the language used that they were intended to constitute norms or standards that would guide the local legislature in an exercise of the conferred power. \* \* \* These provisions must be considered as directory only and as leaving local legislatures with a broad discretion as to the manner in which such ends shall be accomplished."

We considered also in that case the effect of these statutory provisions on the amendatory power conferred upon town councils by §45-24-5, which we held constituted "an express grant of a broad amendatory power to the local legislatures" to amend or repeal an existing ordinance and thereby to make changes in the regulations contained in such an ordinance. *Cianciarulo v. Tarro, supra*, at page 359. We concluded therein that when a local legislature exercises this amendatory power, "those provisions set out in §45-24-3 which limit the power of local legislatures in the enactment of a zoning ordinance apply to an exercise of the

amendatory power only to the extent that the change effected by such amendment must be in conformity with the comprehensive plan" and that the enabling act does not contemplate that "every exercise of the amendatory power conferred by it would necessarily have to be made with rigorous compliance with such directory provisions." The latter reference is, of course, to the norms or standards prescribed in §45-24-3 within which the delegated power is to be exercised.

Having in mind the scope of the authority delegated to the town council to enact or amend zoning ordinances, we turn to complainants' contention that the instant amendment exceeded the authority conferred in that it is not in conformity with the comprehensive plan because it extended a business district to land lying more than 300 feet from an arterial highway. The trial justice, after referring to evidence adduced by complainants that the instant amendment did not conform to the comprehensive plan, concluded that the ordinance did not disclose "a rigid scheme limiting the depth of business areas to 300 or 330 feet from arterial highways." Such rigidity, the court noted, would place the town council "in a legal strait jacket," and held that "the original zoning plan seems to indicate a comprehensive intent to develop business enterprises along the main highways of the Town without specific limitation as to depth. * * * Therefore, the Court finds that the instant amendment to the zoning ordinance does not constitute a departure from the comprehensive plan."

While this court in *Cianciarulo* v. *Tarro, supra*, stated the purpose of the requirement for a comprehensive plan of zoning, we have never undertaken to define the phrase "comprehensive plan" as used in the enabling act. We are aware that some courts have attempted to define this phrase, as for example in *Miller* v. *Town Planning Commission*, 142 Conn. 265, 269, where it was said that a comprehensive plan

is a "general plan to control and direct the use and development of property in a municipality * * * by dividing it into districts according to the present and potential use of the properties." Were we to give a similar narrow meaning to the phrase, we might well in the instant case conclude that the terms of the ordinance and the zoning map are conclusive of the issue and that the town council is precluded from establishing within the town any new business district other than on land lying within 300 feet of an arterial highway.

We cannot agree, however, that the comprehensiveness contemplated in our enabling act either proscribes basic changes in the regulations contained in an ordinance or precludes such revisions thereof as contemporary circumstances and conditions may from time to time require. Indeed §45-24-5 expressly empowers town councils "from time to time to amend or repeal any such ordinance and *thereby change said regulations or districts* * * *." (italics ours) Because of the provisions thus noted, it is our opinion that the phrase "comprehensive plan" was not intended to preclude change and preserve inviolate use districts established in an original zoning ordinance, but that it contemplates revision and change in the regulations to whatever extent that may be accomplished by a valid exercise of the police power delegated to the local legislature.

We find inescapable the conclusion that the legislature, in using the phrase "comprehensive plan" in the enabling act, intended to use it in the context of the zoning power which is valid only as an exercise of the police power of the state. In such context a "comprehensive plan" must of necessity be a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses and the establishment of districts therefor to the health, safety, and welfare of the public and thus to the police power. Because we take this view as to the limits on the exercise of the zoning power that flows from the requirement of an adher-

ence to a comprehensive plan, we are unable to agree with complainants' argument that, absent some ascertainable limitation as to the depths to which business areas may extend, the instant ordinance posits no comprehensive plan.

The constitutional necessity that legislation authorizing zoning requires that such power, when exercised, conform to some scheme or formula in the nature of a comprehensive plan is recognized in *Caires* v. *Building Commissioner*, 323 Mass. 589, wherein the court said at page 593: "The power to make a division of the town into various districts and to designate the purposes for which land in those districts may be used and occupied and to exclude any other purposes rests for its justification on the police power, and that power is to be asserted only if the public health, the public safety and the public welfare, as those terms are fairly broadly construed, will be thereby promoted and protected. A zoning by-law will be sustained unless it is shown that there is no substantial relation between it and the furtherance of any of the general objects just mentioned." That this constitutional concept extends to an exercise of the zoning power to promote the future public interests under the police power is made clear in *Lamarre* v. *Commissioner of Public Works,* 324 Mass. 542, 546.

The concept of comprehensiveness in zoning ordinances, as we understand it, requires only that the scheme or formula of the zoning regulations reflect the necessary relation between the pertinent exercise of the zoning power and the grounds upon which the police power of the state may properly be exercised. The controlling question is not whether the amendment violates the comprehensive plan of the instant ordinance in that it establishes a business district on land lying more than 300 feet from an arterial highway, but whether such establishment of a business district bears a reasonable relationship to the public health, safety, or welfare so as to justify the regulation inhering therein.

The concept of comprehensiveness is incompatible with the concept of exclusion and cannot be used to justify a limitation on the regulation of land uses within the purpose for which the zoning legislation was enacted. The purpose of the ordinance here clearly was to extend its regulatory provisions to the use of land for business purposes to the extent that this may be done consistently with the public health, safety, and welfare. We are of the opinion, therefore, that the amendment of the ordinance so as to extend the areas wherein business uses would be permitted constitutes the regulation of land uses within the comprehensiveness contemplated in the enabling act so long as that regulation bears a reasonable relationship to the public interests.

We cannot agree with the contention of complainants that the amendment constitutes illegal spot zoning. On at least two prior occasions we have considered the validity of zoning challenged as being illegal spot zoning, so called, alleged to have resulted from the legislative amendment of the terms of an ordinance. In *D'Angelo* v. *Knights of Columbus Building Ass'n,* 89 R. I. 76, we followed the well-settled rule that the amendment of a regulation contained in the zoning ordinance in such a manner as to confer upon one parcel of land the benefits of the use classification that is denied property similarly situated is illegal as spot zoning, so called. It is our opinion that the rule in that case is limited as above noted, we having said at page 84: "As far as is indicated on the present state of the record, a single lot has received a classification inconsistent with its surrounding neighborhood. There has been no showing of any general policy or legitimate zoning pattern which would warrant this amendment."

We have, however, refused to extend the concept of illegality resulting from spot zoning, so called, and in particular with respect to exercises of the zoning power by the local

legislatures beyond the rule stated in *D'Angelo* v. *Knights of Columbus Building Ass'n, supra.* We rejected the argument that the amendment of the terms of the zoning ordinance changing the use classification of land is invalid as spot zoning where there had been no showing either that the prior classification had been erroneously established or that since its establishment there had been a substantial change in the character of the uses in the neighborhood in *Cianciarulo* v. *Tarro, supra.* At page 363 of the opinion we said: "We think that a reconsideration or re-examination of the conditions in any area of the city may justify a change in the zoning ordinance as it affects that area, even though there has been no change of conditions in the area since the adoption of the original ordinance."

We are not persuaded that this case raises a question as to spot zoning but rather whether the amendment was an exercise of the police power to regulate land uses bearing a reasonable relation to the public health, safety and welfare. The real thrust of the argument in the instant case, as we understand it, is that the illegality of the amendment results from the arbitrary and discriminatory nature of the reclassification and that it is not an exercise of the zoning power to promote and secure the public interest but rather to promote the interest of an individual landowner and, in so doing, discriminates against the interests of other landowners similarly situated.

If, in fact, the amendment conferred benefits upon the tract of land under consideration and thereby discriminated arbitrarily against other properties similarly situated, it might well be viewed as being confiscatory of the property of the other owners. We are unable to agree, however, with complainants as to the purpose of the instant amendment. The town council was here electing to exercise the police power delegated to it in the enabling act to expand an existing business area by extending it into a residential area

in order to permit the development of an extensive retail shopping center with a large parking area adjacent thereto. This being the purpose of the amendment, it cannot be said to be so contrary to the public interest as to preclude its accomplishment by a valid exercise of the police power.

Other than the fact that the amendment actually changes the use classification of the land involved, there is nothing in the record that establishes its arbitrary or discriminatory character. The ordinance by its very terms clearly contemplates the development of business or commercial areas within the town, purposes which undeniably are so impressed with the public interest as to justify their accomplishment by an exercise of the police power. That such business or commercial uses may take the form of retail shopping centers is hardly disputable and, without intending to narrow the broad view we take of the idea of comprehensiveness as contemplated in the enabling act, we are of the opinion that the development of business areas of this character is consistent with a valid exercise of the police power.

The complainants urge also that the trial justice erred in excluding evidence offered by them to show that the amendment of the ordinance violated the directory provisions of §45-24-3. These provisions set the norms pursuant to which the delegated zoning power may be exercised but do not constitute rigid limitations on an exercise of that power to amend the zoning ordinance absent some extraordinary circumstance or condition. In *Cianciarulo v. Tarro, supra,* in referring to the necessity for compliance with these norms in amending a zoning ordinance, we said at page 361: "Whatever might be the requirement for such compliance in the enactment of an original zoning ordinance or in the substantial revision of an existing zoning ordinance, it is our opinion that the legislature did not intend that every exercise of the amendatory power conferred by it would nec-

essarily have to be made with rigorous compliance with such directory provisions." There is nothing in the instant record, in our opinion, that constitutes a circumstance which would make the exclusion of the proffered evidence prejudicial error.

The appeal of the complainants is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

## ON MOTION FOR REARGUMENT.

### APRIL 8, 1964.

PER CURIAM. After our opinion in the above case was filed the complainants asked and received permission to file a motion for reargument. Pursuant thereto they have filed such a motion, setting out therein certain reasons on which they base their contention that justice requires a reargument of the case.

We have carefully considered these reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Moore, Virgadamo, Boyle & Lynch, Cornelius C. Moore, Salvatore L. Virgadamo, Francis J. Boyle, Jeremiah C. Lynch, Jr.,* for complainants.

*Graham, Reid, Ewing & Stapleton, Edward J. Regan, Eustace T. Pliakas,* for respondents.