DECISION
The appellants in this administrative appeal challenge a decision by the Cranston City Council ("City Council") to change the zoning designation for a certain piece of property from single-family residential to multi-family residential to allow for development of a condominium complex. They argue that the decision of the City Council cannot stand because (1) the City Council failed to give proper notice of the hearing on the zone change request, and (2) the zoning amendment approved by the City Council violates the Comprehensive Plan of the City of Cranston ("Comprehensive Plan"). For the reasons set forth in this decision, this Court affirms the decision of the City Council.
 Facts and Travel
Paula M. Schick ("Schick") and Lynn F. Moran ("Moran") were owners of a parcel of land located on Sachem Drive in the City of Cranston (the "Property"). John Giusti entered into a Purchase and Sale Agreement with Schick and Moran to purchase the Property that was conditioned upon the City Council's approval of a zone change. In June 2001, the City Council received an application from John Giusti (the "applicant") requesting that the City Council change the zoning designation for the Property from A-8 Residential to B-2 Residential. The applicant planned to develop a six unit condominium complex on the Property.
On August 7, 2001, the Planning Commission of the City of Cranston ("Planning Commission") held a hearing on the proposed zoning change and voted to recommend the change to the Ordinance Committee of the Cranston City Council ("Ordinance Committee"). The appellants attended the hearing, either personally or through their legal representatives, and voiced their concerns regarding the adequacy of notice, inconsistency between the proposed amendment and the Comprehensive Plan, and inaccuracies in the engineering plans. On August 16, 2001, the Ordinance Committee held a hearing on the proposed zone change, which was attended by the applicant and the appellants, and voted to refer the matter to the City Council without a recommendation.
On August 27, 2001, at the City Council's monthly meeting, the applicant presented his plan. The appellants also were present and voiced their objections, echoing those concerns that they had expressed at the previous hearings. The City Council voted by a majority of five to two to change the zoning classification of the Property in accordance with the applicant's request.
On September 19, 2001, the appellants filed an appeal of the City Council's decision to this Court, naming as appellees the City of Cranston, the members of the City Council, the owners of the Property (Schick and Moran) and the applicant, John Giusti (collectively referred to as "the appellees"). The appellants contend: (1) that the notice of public hearing failed to fulfill the applicable statutory requirements; and (2) that the zone change does not conform with the Comprehensive Plan. This Court has jurisdiction over this appeal pursuant to R.I. Gen. Laws § 45-24-71.
 Standard of Review
A city or town council has the power to enact or amend a zoning ordinance, but only if the enactment or amendment is consistent with its comprehensive plan. R.I. Gen. Laws § 45-24-50. Such actions by a town or city council are considered to be purely legislative. ConsolidatedRealty Corp. v. Town Council of the Town of North Providence, 513 A.2d 1, 2 (R.I. 1986) (citing Mesolella v. City of Providence, 439 A.2d 1370
(R.I. 1982)); Alianiello v. Town Council of East Providence, 117 A.2d 233
(1955); Rhode Island Home Builders, Inc. v. Hunt, 74 R.I. 255,60 A.2d 496 (1948). As such, these actions "are presumed to be valid."Sweetman v. Town of Cumberland, 117 R.I. 134, 146, 364 A.2d 1277, 1286 (1976); see also Ruby Assoc., Inc. v. Ferranti, 603 A.2d 331, 332 (R.I. 1992).
By statute, however, an aggrieved party may file an appeal with this Court to challenge a city's enactment or amendment of its zoning ordinance. R.I. Gen. Laws § 45-24-71(a). The standard of review governing such an appeal is set forth by statute, as follows:
 The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision.
Id. § 45-24-71(c). According to the Rhode Island Supreme Court, "[a] court may strike down an amendment only if the amendment bears no reasonable relationship to the public health, safety, or welfare."Sweetman v. Town of Cumberland, 117 R.I. 134, 144, 364 A.2d 1277, 1285 (1976).
 The Adequacy of Notice
On appeal, the appellants allege that there were procedural deficiencies that rendered the zoning amendment void. Specifically, the appellants argue that the City Council failed to give adequate notice of its hearing on the requested zone change, as required by R.I. Gen. Laws § 45-24-53. Since a substantial failure to follow procedures may render a zoning amendment void, see 2 Edward H. Zeigler Jr., Rathkopf'sThe Law of Planning and Zoning § 27.04[3][d] (4th ed. 1999), this Court first must address the appellants' challenge to the quality of notice of the City Council's hearing on the appellants' zone change request.
The notice and hearing requirements that a city council must follow with respect to a zone change request are set forth, in pertinent part, by statute, as follows:
 No zoning ordinance shall be adopted, repealed, or amended until after a public hearing has been held upon the question before the city or town council. The city or town council shall first give notice of the public hearing by publication of notice in a newspaper of general circulation within the city or town at least once each week for three (3) successive weeks prior to the date of the hearing . . . . The newspaper notice shall be published as a display advertisement, using a type size at least as large as the normal type size used by the newspaper in its news articles . . . .
R.I. Gen. Laws § 45-24-53. The appellants argue that the notice of hearing that the City Council placed in the Cranston Herald violated this statute because it was typed in a smaller font than that used by the newspaper in its usual news articles. Specifically, the appellants assert that the notice used a type size of seven font, whereas the usual font size used by the newspaper is ten font. The appellants surmise that this deficiency in the quality of notice renders the amendment void.
The appellees respond that the notice was sufficient under the dictates of R.I. Gen. Laws § 45-24-53 as it informed an ordinary layperson of the property affected and the change sought by the proposed amendment.Sweetman v. Town of Cumberland, 364 A.2d 1277 (1976). In particular, the notice set forth the date, time, and place of the hearing, contained a map that showed where the property is located, and informed residents where they could obtain the full text of the ordinance in question.
Furthermore, the appellees contend that R.I. Gen. Laws § 45-24-53(f) burdens the appellants with proving that any alleged defects in notice were intentional or misleading. The appellees aver that since the appellants failed to present any such evidence showing that the alleged defects in notice were intentional or misleading, the appellants have failed to carry their burden of proof with respect to challenging the adequacy of notice.
While the parties clearly debate the merits of adequate notice, therefore, they fail to address the issue of the appellants' standing to raise the question of notice on appeal. The appellees do not question the appellants' standing to raise the notice issue, and the appellants do not argue that they indeed have standing to raise this issue before this Court. Notwithstanding the failure of the parties to raise or address the standing issue on appeal, `"this question is of such overriding importance [to the question of adequate notice] as to be raised suasponte by [this Court].'" Town of Coventry Zoning Bd. of Rev. v. OmniDev. Corp., 814 A.2d 889, 896 (R.I. 2003) (quoting DeCesare v. Board ofElections, 104 R.I. 136, 141, 242 A.2d 421, 423-24 (1968)).
The Rhode Island Supreme Court "has held on numerous occasions that actual appearance before a tribunal constitutes a waiver of the right of such person to object to a real or perceived defect in the notice of the meeting." Graziano v. Rhode Island State Lottery Comm'n, 810 A.2d 215, 221-22 (R.I. 2002) (citing Ryan v. Zoning Bd. of Rev. of New Shoreham,656 A.2d 612, 616 (R.I. 1995); Estate of Konigunda v. Town of Coventry,605 A.2d 834, 835 (R.I. 1992); Zeilstra v. Barrington Zoning Bd. ofRev., 417 A.2d 303, 307 (R.I. 1980); Champagne v. Zoning Bd. of Rev. ofSmithfield, 99 R.I. 283, 288, 207 A.2d 50, 53 (1965)). Where the claimed defect in notice does not disadvantage an objector at the hearing (i.e., by thwarting that party's ability to prepare for the hearing or to adequately respond to the issues raised at the hearing), that party has no standing to object to the adequacy of notice on appeal. Id. at 222.
Based upon the evidence of record, it is clear to this Court that the appellants not only attended the hearings in question, but testified or presented argument through counsel. The appellants also had their expert witnesses-an engineer, Richard Rheaume ("Rheaume") and a land use planner, Michelle Komar ("Komar")-testify on behalf of them at both hearings, thus belying any possible argument that the alleged defect in notice hampered their efforts to prepare for the hearings. Id. at 222 (stating that one who raises a defect of notice argument must be disadvantaged or aggrieved by such defect). Indeed, the appellants do not even argue that the notice in question disadvantaged them in any way; they make no claim that the alleged defect in notice adversely affected their ability to prepare for the hearing or to respond to the applicant's request for a zoning amendment. This Court finds, therefore, that the appellants have failed to establish standing to object to the quality of notice.
Moreover, even assuming, arguendo, that the appellants have standing to challenge the alleged deficiency in the font size of the notice, this Court finds that such an alleged deficiency, absent indicia of intentional misconduct, cannot affect the legality of the zoning amendment. Rhode Island law states that "[n]o defect in the form of any notice under this section shall render any ordinance or amendment invalid, unless the defect is found to be intentional or misleading." R.I. Gen. Laws § 45-24-53(f). Here, the appellants neither argue nor present any evidence showing that the alleged defect in form was intentional or misleading. Rather, the appellants argue that the notice was difficult to read, some street names were ineligible, individual plats were not marked, and the notice did not indicate that the proposed amendment would change the zoning from single family to multi-family. Even if this Court were to accept all of the appellants' arguments as true, they still have failed to show that the defects were intentional or misleading.
Furthermore, looking to the actual form of notice, this Court finds that it was sufficient to inform an ordinary citizen of the nature of the proposed zoning amendment. The notice informed readers of the purpose of the meeting, namely to consider the proposed "change of zone from A-8 to B-2 for residential condominium Development [sic] with a total of 6 units." See Plaintiffs' Memorandum of Law (Exhibit 2). The notice contained a map and stated that the "property is located on the northwesterly side of Sachem Drive between Melody Lane and Hoffman Avenue . . . ." Id. The notice also stated where one could obtain the full text of the proposed change to the zoning ordinance.
This Court thus finds that the appellants lack standing to challenge the quality of the notice of hearing before the City Council on the zoning amendment because they appeared at that hearing and were not prejudiced in any way by the defect in the form of the notice that they allege. Even assuming that they have standing to raise that issue, the notice was not violative of R.I. Gen. Laws § 45-24-53, as there is no evidence that the defect alleged was intentional or misleading as required by R.I. Gen. Laws § 45-24-53(f), and this notice was "sufficient to inform the ordinary [layperson] lacking expertise in zoning matters of the property affected and the changes sought."Sweetman, 364 A.2d at 1283 (citing Golden Gate Corp. v. Town ofNarragansett, 116 R.I. 552, 359 A.2d 321 (1976)); Federal Bldg. Dev. Corp. v. Town of Jamestown, 112 R.I. 478, 312 A.2d 586 (1973);Carroll v. Zoning Bd. of Rev., 104 R.I. 676, 248 A.2d 321 (1968). For all of these reasons, the appellants' challenge to the City Council's decision to amend the zoning ordinance on the grounds of an alleged defect in the form of notice-a challenge which borders on the frivolous-is rejected.
 The Zoning Amendment and the Comprehensive Plan
The next issue raised by the appellants on appeal is whether the City Council's amendment to the zoning ordinance is consistent with the Comprehensive Plan. The City Council voted to amend the zoning ordinance so that the Property's zoning changed from A-8 Residential to B-2 Residential. Property that is zoned A-8 Residential is intended for single-family dwellings on lots with a minimum of eight thousand (8,000) square feet. Cranston City Code, Zoning art. III § 30-4. Property that is zoned B-2 Residential is intended for single, two, and multiple family dwellings. Id. There is no minimum square footage requirement for B-2 zoning. Id. Here, the Property contains about 2.2 acres of land and is located adjacent to land that is zoned B-2 Residential. Although the Property was zoned A-8 Residential before the zone change, B-2 multi-family housing is located directly across Sachem Drive and extends to the south and to the east of the Property. Areas north and west of the Property are developed with single-family housing.
The appellants argue on appeal that the zoning amendment cannot withstand judicial scrutiny as it violates the Comprehensive Plan. The appellants state that two purposes of the Comprehensive Plan are to support neighborhood stability and to preserve the existing density of established neighborhoods. Accordingly, based upon the expert testimony of Ms. Komar, the appellants aver that the intrusion of new, multi-family dwellings into this old, mainly single-family, well-established neighborhood is inconsistent with the Comprehensive Plan.
Relying on the expert testimony of Mr. Rheaume, the appellants further allege that the construction of multi-family dwellings will have an adverse impact on wetlands and cause drainage problems for the neighborhood. Mr. Rheaume testified that there were serious flaws in the applicant's drainage calculations and that, as a result, the proposed design will not adequately support any increased water runoff or meet regulatory standards. The appellants thus conclude that the zoning amendment "bears no reasonable relationship to the public health, safety or welfare." Sweetman, 364 A.2d at 1285-86.
The appellees note that the appellants bear a "heavy burden in attempting to invalidate a zoning ordinance on this basis." Id. at 1285. The appellees argue that the appellants have failed to meet the burden of overcoming the presumption of validity that surrounds the legislative act of amending the zoning ordinance. The applicant had his expert witnesses-a community planner, Daniel W. Varin, and an engineer, Samuel Hemenway-present testimony and evidence to the City Council. The appellees state that the City Council's acceptance of this expert testimony should be given deference. See Mendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985) (stating that where there is conflicting testimony from equally qualified experts and substantial evidence on both sides, the zoning board is in a better position to resolve the conflict than the Superior Court such that judicial review should be limited). Finally, the appellees argue that, even though the City Council passed the zoning amendment, the applicant still needs the approval of the Planning Commission and building permits for his project such that the appellants' concerns about water runoff can be addressed in those forums.
This Court finds that the administrative record supports the City Council's finding that the zoning amendment conforms with the Comprehensive Plan. Based on the record evidence, this Court cannot conclude that the zoning amendment "bears no reasonable relationship to the public health, safety, or welfare." Sweetman v. Town of Cumberland,117 R.I. 134, 144, 364 A.2d 1277, 1285 (1976).
Support for the City Council's finding that the zone change conforms with the Comprehensive Plan can be found not only in the record underlying its own decision to grant the zone change request, but also in the decision of the Planning Commission that preceded it. See Appellees' Exhibit B, Planning Commission Ordinance No. 6-01-01, August 7, 2001. After holding a hearing and listening to the same evidence that would later be put before the City Council, the Planning Commission voted to recommend the approval of the zone change and made findings of fact to support its recommendation. The Planning Commission found that the Comprehensive Plan requires the Property to retain its land use designation of "Residential, 4-8 units per acre" and that "the proposed limit of 6 units on the [Property] will comply with the [C]omprehensive [P]lan's land use designation." Id. The Planning Commission also found that there are many multi-family dwellings in the immediate vicinity that range in density from ten units to twenty-nine units per acre, whereas the applicant's proposal would result in a density of under three units per acre. Finally, the Planning Commission noted that the proposal already had received wetlands approval from the Rhode Island Department of Environmental Management (DEM). Thus, the Planning Commission was convinced that the proposal was consistent with the Comprehensive Plan. In addition, although the Ordinance Committee subsequently voted to refer the proposal to the City Council without a recommendation, it also found explicitly that the proposed zoning amendment conformed with the Comprehensive Plan.
Moreover, at the hearing before the City Council with regard to the proposed zoning amendment, the applicant submitted substantial expert testimony to prove that the amendment conforms to the Comprehensive Plan and that the zone change on the Property is compatible with the rest of the neighborhood. Indeed, in his testimony before the Council, Mr. Varin, an expert city planner presented by the applicant, opined that the zone change would conform to the Comprehensive Plan. He reiterated comments made by the Planning Board Director at the meeting before the Planning Commission that the proposal affected a nice transition between the higher density parcels to the south and east of the property and the lower density parcels to the north and west. The City Council was certainly within its rights to accept this expert testimony and reject the contrary opinion testimony of the appellants' expert. It is not the prerogative of this Court under these circumstances to substitute its judgment, as the appellants ask it to do, for that of the City Council, particularly where the City Council's view of the expert testimony is clearly supported by the record, case law, and common sense. SeeMendonsa, 495 A.2d at 263.
This is not a case of illegal spot zoning where the City Council has carved out an island of multi-family dwellings in the midst of an ocean of single family homes. Compare Verdecchia v. Johnston Town Council,589 A.2d 830, 832 (R.I. 1991) (stating that no spot zoning occurred when the city council amended its zoning ordinance to rezone a lot zoned single family to a multi-family zone since multi-family dwellings existed in the neighborhood) with Toole v. The May-Day Realty Corp., 101 R.I. 379, 383-84, 223 A.2d 545, 547 (1966) (holding that the reclassification of two lots created an island of multi-family residences in a predominately single-family zone, thereby rendering the lots incompatible with the surrounding properties). This Court finds, therefore, that the appellants have failed to demonstrate that the City Council erred in finding that the rezoned property is compatible with surrounding properties and thus is in conformance with the Comprehensive Plan. See Sweetman, 364 A.2d at 1286 (stating that when the rezoned parcel is compatible with its neighborhood then the presumption of the validity of the city council's action includes the presumption that the amendment is in accordance with the city's comprehensive plan).
As to the appellants' argument that there are flaws in the applicant's drainage calculations, this Court is cannot strike down the zoning amendment on this basis. In dealing with a challenge to a zoning ordinance amendment, the only issue of concern to this Court is whether the amendment conforms with the Comprehensive Plan. See Toole, 223 A.2d at 547.
In addition, as mentioned above, the City Council heard testimony from both parties' expert witnesses and did not believe that the appellants' arguments regarding drainage were sufficient to prevent it from amending the Property's zoning classification. Furthermore, the DEM approved the proposal and explicitly rejected the arguments of the appellants' expert witness, Mr. Rheaume, regarding drainage issues. See Appellees' Exhibit C, DEM Letter to Rheaume, September 4, 2001. As noted by the applicant, it still must obtain the approval of the project by the Planning Commission and secure the requisite building permits; thus, the appellants still have the opportunity to be heard with regard to the issue of drainage. The appellants' claim that the applicant's proposed condominium project may cause drainage problems, therefore, is rejected by this Court as grounds for reversal of the City Council's decision to approve the zoning amendment.
 Conclusion
After reviewing the entire record, this Court finds that the appellants lack standing to raise the issue of inadequate notice of the City Council's hearing on the zoning amendment. Moreover, even if they have standing to raise that issue, the appellants have failed to establish that the form of notice was inadequate under the law. The appellants also have failed to show that the City Council erred in determining that the zone change conformed with the Comprehensive Plan. Indeed, based on the evidence of record, this Court cannot conclude that the zoning amendment bears no reasonable relationship to the public health, safety, or welfare.
For all of these reasons, all of the appellants' arguments on appeal are rejected, their appeal is denied and dismissed, and the decision of the City Council to amend the zoning ordinance to change the zoning of the Property from A-8 Residential to B-2 Residential to allow for construction of the proposed condominium complex is affirmed. Counsel are directed to confer and submit to this Court forthwith for entry an agreed upon form of order and judgment consistent with this decision.